GREMILLION, Judge,
concurs with written reasons.
| |I concur with my colleagues in their conclusions. The trial court was right. The “obesity” exclusion in the subject policy is simply too problematic to enforce. Furthermore, the plaintiff was entitled to the penalties and attorney’s fees awarded by the trial court. However, I do wish to provide my specific reasons for so ruling.
Summary Judgment
The pertinent policy language purports to disallow “treatment” that is provided “in connection with or related to obesity.” However, the policy undisputedly provides coverage for such maladies as stroke, high blood pressure, high triglycerides, and high cholesterol.
Thus, there is no problem interpreting this exclusion when the medical evidence *58 clearly indicates that the treatment is being provided for only “obesity.” Such treatment would not be covered. The policy is also clear in a case where the medical evidence shows the treatment is strictly for high blood pressure, for example. In such a case, the treatment would clearly be covered.
A problem arises, however, when the medical records indicate that the treatment is being given not only to treat obesity but also to treat a condition or disease covered by the policy. That, of course, is exactly what occurred in this case.
If this exclusion or some other part of the policy would have clearly advised |2the plaintiff how OGB would deal with such a circumstance, I would have no trouble enforcing the provision. Unfortunately, there is no such rule or procedure provided for in the policy.
As a result of this deficit in the policy, OGB was left to develop its own procedures for dealing with such cases. Ms. Nancy Baker, an Assistant Manager with the Claims Processing Department of OGB, testified that she would review the medical records and make her own determination as to what the proposed treatment was “primarily treating.” However, she also advised that she would not allow payment for a gastric bypass, even if the medical records indicated that this surgery was for a covered condition other than obesity. Ms. Baker would reject such a claim based on her own notion that gastric bypass would only treat or affect those covered conditions by first causing weight loss.
There is nothing in the policy that allows OGB to withhold coverage for the treatment of otherwise covered ailments merely because its employees determined that the treatment of those ailments were not the “primary” focus of the treatment.
Additionally, nothing in the record suggests that Ms. Nancy Baker is anything other than a fair and competent person. However, the record is equally devoid of any evidence to suggest that she has either the authority or the expertise to determine what a physician or surgeon is “primarily treating.”
Ultimately, I would be in favor of enforcing this exclusion if the policy explained to insureds with clarity, how OGB would respond in the very frequent case of a multiple diagnosis that includes both clearly excluded diseases such as obesity and clearly covered diseases such as those suffered by the plaintiff. The policy is not merely unclear or ambiguous as to that point. It is silent. As the majority properly | .¡points out, that ambiguity and silence must be interpreted in favor of coverage. Accordingly, summary judgment was proper.
Penalties and Attorney’s Fees
The McKenzie and Johnson treatise on insurance law and practice states that there are two common reasons for the award of penalties and attorney’s fees in the realm of health and accident insurance. One is “the failure of an insurer to investigate a claim timely or thoroughly.” 15 La.Civ. L. Treatise: Insurance Law and Practice. The other is “an unreasonable policy interpretation by the insurer.” [Section 293] Id.
In this case, penalties and attorney’s fees should not be awarded based on an unreasonable policy interpretation. As the majority points out, the interpretation of this obesity exclusion is res nova. Furthermore, OGB had a right to test whether the courts would enforce an obesity exclusion, particularly when the plaintiff weighed in excess of 400 pounds and the treatment involved was gastric bypass: a procedure designed to restrict food intake and reduce *59 caloric absorption in the case of severe obesity.
On the other hand, OGB clearly failed in its duty to investigate this claim timely and thoroughly. The trial court explained the defendant’s completely unacceptable feet dragging as follows:
In December 1995, Mr. Watson asked to appeal the Group’s denial of coverage, as was permitted by the Plan Document (Third Party Plaintiffs Exhibit 2). Pursuant to the Group’s own rules and regulations, the appeal was to be set for a full evidentiary hearing “as soon as reasonably possible” (page 48 of Plan Document). Mr. Watson began making requests that his hearing be set, but the Group did not set the hearing until May of 1997. This delay occurred despite the fact that Mr. Watson had submitted approximately 13 written requests that the hearing be set. Even then, two of the Group’s witnesses were not available at the hearing, thus requiring the evidence to be held open. (Neither a transcript nor a copy of the tapes from the above-described hearing have been produced by Defendant prompting Mr. Watson’s 14concern that such items may have been lost.)
Even though the record was held open, over the next four years the Group refused to make its witnesses available for depositions to complete the appeal despite over 15 separate written requests and pleas to do so. In fact, during that prolonged delay, defendant’s medical review officer changed. The witnesses, including the new review officer, were ultimately made available on May 15, 2001 — almost five years after the hearing began. In addition to the witness problems, during the delay caused by the Group, its own hearing process was changed without any notice of those changes being provided to Mr. Watson. The change in the Group’s procedures eliminated any evidentiary hearings as part of the appeal process.
In addition, as late as 2003, Mr. Watson was advised of the fact that the hearing procedures had changed, that his claim was being reviewed, and that a decision would follow shortly. The Court has been provided with no information to suggest that such a review ever occurred. Despite promises by the Group to hear his appeal (even after litigation commenced), Mr. Watson has waited almost 13 years to have his claim reviewed. In the meantime, he has been sued by at least one health care provider and has managed to pay his medical debts, while at the same time incurring damage to his credit history.
In short, penalties and attorney’s fees are not due here because the OGB lost its right to enforce a policy provision. Those penalties and fees are due because it took the OGB thirteen years to resolve this matter.